### COPP v. HOLLINS et al.

(Supreme Court, General Term, First Department. February 14, 1890.)

1. WITNESS—CREDIBILITY—RUMORS.

The testimony of E., a witness for plaintiff, was taken in Canada on commission. Before leaving this country, he was president of a bank in New York city. His departure to Canada was sudden and unannounced except to his family. He has remained there ever since, without any explanation or disclosed object. There was testimony as to his having had trouble with the bank, and of its failure. On cross-interrogatories under the commission, he stated that he was indebted to various parties in New York, but he refused to state why he left the United States, or what name he used when he first arrived in Canada, because, as he said, of "the evident tendency" of the questions to criminate him. Held, that the court properly refused to instruct that "the fact that there may be unfavorable rumors about E.'s financial transactions does not discredit him as a witness. Even an untried indictment against him would not discredit him as a witness. He is entitled to the same credit and confidence as any other unimpeached witness. Until convicted of some offense, mere accusations, even when made by indictment, do not impair his credit as a witness in a court of justice, and the jury are bound to weigh his testimony in the same manner, and judge of its truth by the same rules, as in the case of any other unimpeached witness,"—as it involved the assumption that the witness was entirely unimpeached.

2. SAME—FUGITIVE FROM JUSTICE.

The charge of the court, which contained much that was unexceptional, contained this observation: "I will not charge you that a man who is confessedly a fugitive from justice is entitled to the same credit as a witness who comes here utterly unimpeached in any way, but I will charge you that he is not prevented from being a witness, and that it is for you to determine, with those facts before you, and with his relation to the case, exactly what weight you will give to his testimony." There was no exception to this language, but to the charge in general. Held, that the statement of his being a fugitive from justice was at least made with color of circumstance and surrounding, and so nearly accurate as, if not acceded to, to call for instant disclaimer.

Appeal from circuit court, New York county.

Action by William A. Copp against Harry B. Hollins and others. From a judgment for defendants rendered on a verdict, also from an order denying a motion for a new trial, and from an order allowing an extra allowance of $1,000, plaintiff appeals. For former report, see 1 N. Y. Supp. 151.

Argued before VAN BRUNT, P. J., and DANIELS and BARRETT, JJ.

R. P. Harlow, for appellant. Dos Passos Bros., (Chas. C. Shelton, of counsel,) for respondents.

BARRETT, J. A careful review of this record has led us to the conclusion that there is only one doubtful question in the case, and that arises from an observation made by the learned judge who presided at the trial in commenting upon one of the plaintiff's requests to charge. Upon the merits, notwithstanding the elaborate and exhaustive argument presented by the learned counsel for the plaintiff, we entertain no doubt; and we think that the copious citation of authorities with which he has fortified his views was labor misapplied. The defendants are stock-brokers. John C. Eno was a customer of theirs. He

operated with two accounts,—one styled "John C. Eno, No. 1;" the other, "John C. Eno, No. 2." The former was always an individual account; the latter, for a time, a joint account with Amos F. Eno. This joint account was peculiar in its partnership character. John C. put in $30,000; Amos F., $10,-000. John was to operate in stocks, and if anything was made Amos was to have one-quarter; but upon the loss of his $10,000 Amos was to go out. The $10,000 was lost, and Amos did go out; John thereupon assuming the account, and telling Amos that thereafter he would carry it on himself. About the 16th of May, 1884, the account No. 1 showed a balance in favor of John of over $54,000. The account No. 2, however, showed a balance against him of more than $54,000. Thereupon, John transferred the balance due on account No. 1 to account No. 2, and satisfied *pro tanto* his indebtedness on the latter account. Having thus used the balance due him on account No. 1 to pay his honest debt on account No. 2, John subsequently ignored the transaction, and assigned the apparent balance on account No. 1 to the plaintiff. These facts were necessarily found by the jury under the charge of the court; and they were so found upon evidence which, though conflicting, clearly preponderated, both as to character and probability, in the defendants' favor.

We entirely agree with the learned judge in his charge to the jury, that it was entirely competent for Amos F. Eno, upon the loss of his $10,000, to arrange with John C. Eno that he (Amos) should retire 'from the adventure, and that John should thereupon continue it upon his own account. Thereafter the defendants had a right to treat the two accounts as substantially one; and the balance resulting from the blending thereof was the true indebtedness, as between them and John C. Eno. It is entirely clear, therefore, that John C. Eno had nothing to assign to the plaintiff, and that, at the date of the assignment, he was in fact indebted to the defendants in the small balance in their favor, resulting from the application in question. This result, however, follows from the jury having discredited John C. Eno, and having given the preference in belief to Amos F. Eno as to the assumption of account No. 2, and to the defendant Hollins and his former book-keeper, Beekman, as to the direction to transfer the balance due upon account No. 1. And that brings us to the only serious question in the case. John C. Eno was examined as a witness for the plaintiff. His testimony was taken in Canada upon commission. Upon his examination under this commission, he declined to answer a number of cross-interrogatories evidently intended to prove that he was a fugitive from justice, and otherwise unworthy of credit. With a view, doubtless, to this situation, and for the purpose of neutralizing certain suggestive circumstances running through the case, which were likely to affect the jury's estimate of this witness, the learned judge was asked to charge as follows: "(10) The fact that there may be unfavorable rumors about John C. Eno's financial transactions does not discredit him as a witness. Even an untried indictment against him would not discredit him as a witness. He is entitled to the same credit and confidence as any other unimpeached witness, until convicted of some offense. Mere accusations, even when made by indictment, do not impair his credit as a witness in a court of justice, and the jury are bound to weigh his testimony in the same manner, and judge of its truth by the same rules, as in the case of any other unimpeached witness." This proposition, as thus put, the court refused to charge, and properly; for it involved the assumption that the witness was entirely unimpeached. The request, however, was subdivided and commented upon in such a manner as substantially to cover all that the plaintiff was properly entitled to. With regard to the last paragraph in the request, the court made this observation: "I will not charge you that a man who is confessedly a fugitive from justice is entitled to the same credit as a witness who comes here utterly unimpeached in any way; but I will charge you that he is not prevented from being a witness, and that it is for you to de-

termine, with those facts before you, and with his relation to the case, exactly what weight you will give to his testimony." The record then states that the plaintiff excepted to the refusal to charge as requested, and to the charge as made. This was altogether too general. There was much in the charge as made which was unexceptionable. There was no exception to the language quoted. This is conceded in the appellant's points, and the learned counsel there tells us that the failure to except specifically was "an inadvertence of counsel." The record, we think, relieves him from this self-accusation. Eno's position as a fugitive from justice seems to have been taken for granted by both sides, and the case appears to have been tried upon that idea. The facts are not far from justifying the learned judge's expression. Eno was president of the Second National Bank of this city before he left the country. He went to Canada on the 22d of May, 1884, suddenly, and without announcing his intended departure to any one save his wife and brother-in-law; and he has remained there, without explanation or disclosed object, ever since. The witnesses speak of his troubles with the bank of which he was president, of its failure, and of those troubles intensifying the panicky feeling which then existed, and which culminated in a financial panic. In answer to the question whether he was not largely indebted, he replied: "I am indebted to various persons in New York city;" and he speaks of the plaintiff as one of his creditors. The plaintiff, too, says that he (Eno) was in trouble when he executed the assignment. When asked to state why he left the United States, or what name he used when he first arrived in Canada, Eno declined to answer, because, as he said, of "the evident tendency" of the questions to criminate him. Surely, in view of all this, it was the duty of counsel to disclaim what the court's observation attributed to the plaintiff. If that observation had been met by such disclaimer, a simple reference to Eno's absence, under the circumstances disclosed, would have been a natural as well as a sufficient modification of the phrase now for the first time objected to. The instruction itself was well enough; and, if the characterization which accompanied it was stronger than the facts warranted, the court's attention should have been drawn to the subject, and a fair opportunity afforded of conforming the expression to what might strictly be inferred from the facts actually in evidence. It was not at all a bald statement made by a judge regarding a witness, which must have prejudiced the defeated party. It was either a correct view of the witness' attitude, and of the plaintiff's own construction of that attitude,—as to which we need not express a definite opinion,—or a statement made with color of circumstance and surroundings, and so nearly accurate as, if not acceded to, to call for instant disclaimer.

The other questions presented call for no special comment, and the judgment and orders appealed from should be affirmed, with costs.

VAN BRUNT, P. J. I concur. I think that it is not at all material whether Amos F. Eno's connection with account No. 2 had ceased or not. John C. Eno had a right to pay the same either in money, property, or transfer of individual credits.

DANIELS, J. I concur.

BARRETT, J. I also concur in this observation of the presiding justice.